PARIENTE, J., concurring.
I fully concur in the majority's decision today, which holds that the Twins' negligence action was tolled by section 95.051(1)(h), Florida Statutes (2006)-the tolling statute[11] -because the Twins did not have a guardian ad litem appointed for the purposes of bringing a negligence action. See majority op. at 880. I also agree with the majority's conclusion that the Second District Court of Appeal addressed this issue on the merits, and it is therefore properly before this Court. Majority op. at 881. I write separately to further explain why the Statewide Guardian Ad Litem Program (GALP), which was statutorily created to represent the best interests of children in dependency proceedings, is not empowered to represent children in separate proceedings, such as a separate negligence action.
Preservation
Because the Second District specifically ruled on the issue before us-whether the guardian ad litem appointed to represent the Twins' best interests in the dependency *883 action was empowered to bring a separate negligence action on their behalf-and the Twins have properly challenged that ruling in this Court, I agree with the majority that we may address it. Majority op. at 881.
Although the Twins' attorney missed the mark in the Second District by arguing that the Twins' guardian ad litem did not know of the factual basis for the negligence claim, the Second District clearly ruled on the specific issue addressed by the majority in this case-whether the Twins' claim was tolled because they did not have a guardian ad litem appointed for the purposes of bringing a negligence action. Indeed, the Second District concluded: "Under the plain language of the [tolling] statute, the limitations period on a minor's cause of action is not tolled when a guardian ad litem exists, except when that guardian ad litem has interests adverse to the minor or has been adjudicated incapacitated." D.H. ex rel. R.H. v. Adept Cmty. Servs., Inc. , 217 So.3d 1072, 1083 (Fla. 2d DCA 2017). Thus, contrary to the dissent, the Second District did more than "merely reject[ ]" the Twins' argument that "attempted to read the delayed discovery doctrine into the tolling statute." Dissenting op. at 889. The Second District affirmatively held that the limitations period was not tolled because a guardian ad litem existed. D.H. , 217 So.3d at 1083. The Twins have now properly challenged the Second District's conclusion regarding the plain language of the tolling statute in this Court, arguing that "the dependency court guardian ad litem that existed in this case ... was not a guardian ad litem sufficient to defeat tolling of the statute of limitations." Twins' Initial Br., at 43-44.
If this Court were to adopt the dissent's view, parties in this Court would be powerless to challenge a district court's ruling on an issue not specifically advanced by the parties in the district court. While the dissent cites a number of cases seemingly in support of this view, see dissenting op. at 888, upon closer inspection, none of those cases actually stand for the proposition. Rather, the cases cited by the dissent simply stand for the well-established and unremarkable principle that an argument must be preserved in the trial court and then specifically raised on appeal in order for the appellate court to address it. Thus, because nothing in this Court's precedent prohibits us from addressing an issue not specifically argued in the district court, but was nevertheless ruled upon by the district court, I agree with the majority that the issue is properly before this Court.
I now turn to provide a more complete understanding of the scope and role of the statutorily created GALP to demonstrate that the majority's conclusion regarding the applicability of the tolling statute is not only legally correct based on the plain and obvious meaning of the term "guardian ad litem," but also comports with the statutory scheme created by the Legislature. This statutory scheme reflects a clear legislative intent that guardians ad litem appointed in dependency proceedings are limited to advocating for the child's best interests in those proceedings.
The Scope and Role of the GALP
Chapter 39, Florida Statutes, governs "Proceedings Relating to Children." In 2003, the Legislature created a Statewide Guardian Ad Litem Office to "provide a statewide infrastructure to increase functioning and standardization among the local programs currently operating in the 20 judicial circuits" around the State. § 39.8296(1)(d), Fla. Stat. (2003) ; see also ch. 2003-53, § 1, Laws of Fla.
Section 39.822, Florida Statutes (2018), outlines the appointment of individual guardians ad litem to represent the best *884 interests of children in abuse, abandonment, or neglect proceedings:
(1) A guardian ad litem shall be appointed by the court at the earliest possible time to represent the child in any child abuse, abandonment, or neglect judicial proceeding, whether civil or criminal. Any person participating in a civil or criminal judicial proceeding resulting from such appointment shall be presumed prima facie to be acting in good faith and in so doing shall be immune from any liability, civil or criminal, that otherwise might be incurred or imposed.
....
(3) Upon presentation by a guardian ad litem of a court order appointing the guardian ad litem:
(a) An agency, as defined in chapter 119, shall allow the guardian ad litem to inspect and copy records related to the best interests of the child who is the subject of the appointment, including, but not limited to, records made confidential or exempt from s. 119.07(1) or s. 24(a), Art. I of the State Constitution. The guardian ad litem shall maintain the confidential or exempt status of any records shared by an agency under this paragraph.
(b) A person or organization, other than an agency under paragraph (a), shall allow the guardian ad litem to inspect and copy any records related to the best interests of the child who is the subject of the appointment, including, but not limited to, confidential records. For the purposes of this subsection, the term "records related to the best interests of the child" includes, but is not limited to, medical, mental health, substance abuse, child care, education, law enforcement, court, social services, and financial records.
(4) The guardian ad litem or the program representative shall review all disposition recommendations and changes in placements, and must be present at all critical stages of the dependency proceeding or submit a written report of recommendations to the court. Written reports must be filed with the court and served on all parties whose whereabouts are known at least 72 hours prior to the hearing.
§ 39.822, Fla. Stat. (2018). Nothing in this section or elsewhere in chapter 39 empowers a guardian ad litem appointed to represent a child's best interests in a dependency proceeding to also bring a separate civil suit or negligence action on the child's behalf. In fact, appointed guardians ad litem are statutorily immune from suit. See id. § 39.822(1).
In addition to chapter 39 guardians ad litem lacking the legislative authority to bring civil actions on behalf of the children they represent, they also lack the practical ability and resources to bring such actions. As the GALP explained in its amicus brief to this Court, staff are not trained to represent children in private litigation or personal injury cases, and the Legislature "does not provide funds" for doing so. GALP Amicus Br., at 7. Additionally, although the GALP has paid staff to assist in its mission of helping courts determine what is in the best interests of the child, individual guardians ad litem are typically volunteers who may not be attorneys. See Volunteer FAQ , Fla. GALP, https://guardianadlitem.org/faq/ (last visited Aug. 29, 2018).
Further, there may be times when the GALP is appointed to represent a child, but an individual guardian ad litem is not assigned to the case. See majority op. at 874-75 & note 2. In this case, an individual guardian ad litem was appointed on June 6, 2006, and discharged less than two months later on July 31, 2006. Id. at 874 note 2. Thus, practically speaking, there *885 was no guardian ad litem in this case who could or should have known that there were other entities that might be responsible for the Twins' abuse. And even if there had been, to be able to discover whether other entities contributed to the child's abuse while in the midst of an ongoing dependency action would be highly unlikely, especially for a volunteer guardian ad litem who does not possess that training.
Regardless of whether the Twins were assigned an individual guardian ad litem, the GALP's singular responsibility in this and all dependency cases is to advocate for the best interests of the child. There is simply no indication that the Legislature intended that a chapter 39 guardian ad litem would be expected to determine that a negligence action should be brought arising out of events that led to the dependency proceeding, and then find private counsel to bring the action-all while continuing to advocate for the child's best interests in the dependency action. Any result that bars a child from the opportunity to bring a negligence action because the guardian ad litem did not timely file a separate lawsuit for the child's injuries is antithetical to the purpose of the tolling statute, which, as the majority aptly observes, is "to increase procedural protections for children in situations where a child's inability to sue would likely lead to harm." Majority op. at 879.
I therefore agree with the majority that the term "guardian ad litem," as used in the tolling statute, "means a guardian ad litem appointed to represent the child in the particular proceeding in which the claim to be tolled is brought." Majority op. at 879. In this case, because the Twins did not have a "guardian ad litem" within the meaning of the tolling statute, the tolling statute does not prohibit the Twins' negligence claim. See majority op. at 880.
For these reasons, I fully concur in the majority opinion.
LEWIS, J., concurs.

This subsection is now codified in section 95.051(1)(i), Florida Statutes (2017).